IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| M.F., a minor, by and through his father, MICHAEL FISHER, and his mother, KATHERINE FISHER, | § § § § | |
| **Plaintiff,** | § § | Civil Action No. 4:23-cv-01102-O |
| v. | § § § | |
| CARROLL INDEPENDENT SCHOOL DISTRICT, WHITNEY WHEELER, in her individual capacity and capacity as Principal of Durham Intermediate School, AND KIM RAY, in her individual capacity and capacity as Assistant Principal and Campus Behavior Coordinator of Durham Intermediate School, | § § § § § § § § § § § | JURY TRIAL DEMANDED<br><br><br>ORAL ARGUMENT REQUESTED |
| **Defendants.** | § § | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

By perplexingly assessing reality and transmogrifying the law, Defendants Carroll Independent School District (the "District"), Whitney Wheeler ("Wheeler"), and Kim Ray ("Ray") (collectively, "Defendants") do nothing more in their response than confirm the necessity for a temporary restraining order ("TRO"), all the while attempting to violate the constitutional rights of a child. Defendants' response is quite something—read closely, Defendants present not a shred of evidence or argument about this fundamental fact: nothing M.F. did, created, or published "materially disrupt[ed] classwork or involve[d] substantial disorder or invasion of the rights of others." And Defendants admit as much—it is uncontroverted that M.F. did not create or publish the post regarding Minor #2, which is what Defendants' evidence shows may have caused some

disruption.[1] And yet, Defendants, trying to sniff out a mob-style joint enterprise, are punishing M.F. under a RICO-like standard of "justice"—according to Defendants, so long as M.F. is associated with someone who allegedly bullies, then M.F. does not deserve constitutional rights.

Thankfully, Defendants' response demonstrates why a TRO is necessary. Their response only shows further why M.F. has a substantial likelihood to succeed on the merits—Defendants concede that M.F. engaged in speech, and did so off campus and outside of school. And then they fall way short of showing that _M.F._'s speech caused a substantial disruption. Predicating their subversion of M.F.'s First Amendment rights on the basis of others' acts defies the Constitution. Moreover, Defendants altogether fail to address the other TRO-factors in substantive fashion—their conclusory assertions of the equities, their harm, and the public interest are unsupported by law and certainly do not come close to trumping an individual's rights guaranteed by the Constitution. M.F. respectfully requests that the Court grant the TRO.

## ARGUMENT AND AUTHORITIES[2]

### I.    DEFENDANTS' "EVIDENCE" PROVES THEY DEPRIVED M.F. OF HIS FIRST AMENDMENT RIGHTS

Defendants' response concedes that (1) the post M.F. created and published is protected speech, and (2) M.F.'s speech took place off campus and outside of school. *See, e.g.*, Defs.' Br. at 6, 11, ECF No. 8. That leaves Defendants' hopes on this TRO-factor hinging on whether M.F.'s speech, given Defendants' "diminished" capacity under *Mahanoy Area School District v. B.L.*,

---

[1] The individual Defendants label as Minor #2 is not mentioned in the Complaint (because M.F. did not create or publish the post about her). The individual Defendants label as Minor #3 is identified in the Complaint as Minor #2. And the individual Defendants label as Minor #1 is also identified as Minor #1 in the Complaint. To simplify matters in this reply, Plaintiff references these individuals using Defendants' selected numbering. *See* Dkt. Nos. 8 to 8-1.

[2] To the extent Plaintiff does not address in this reply certain arguments Defendants make in their response, Plaintiff rests on his previous motion briefing. *See* ECF No. 5.

"materially disrupt[ed] classwork or involve[ed] substantial disorder or invasion of the rights of others." 141 S. Ct. 2038, 2045–46 (2021) (internal quotation marks and citation omitted). Defendants' primary strategy to satisfy their burden consists of flooding the factual playing field with considerable assertions and contentions of (highly) questionable relevance, just hoping the Court will simply not bother. Though Defendants seek to skip over the fact that, at this stage, M.F.'s well-pleaded allegations and uncontroverted statements are taken as true, *see Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976), Defendants' self-serving, conclusory hearsay—the only evidence Defendants offer—demonstrates that Defendants unlawfully deprived M.F. of his First Amendment rights. And because it is Defendants' burden to show that Defendants complied with the law in punishing M.F., Defendants' arguments only further compel Plaintiff's substantial likelihood of succeeding on the merits. *See Fluker v. Ala. State Bd. of Educ.*, 441 F.2d 201, 206 (5th Cir. 1971); *see also McCullen v. Coakley*, 573 U.S. 464, 495 (2014) (reciting that the government bears the burden in First Amendment strict-scrutiny analyses).

After a deliberate reading, Defendants' response and affidavit[3] make two things clear. To start, Defendants have *zero* evidence that <u>M.F.</u>'s speech substantially disrupted the school environment as *Tinker* requires. One need only look at Wheeler's sworn words to see as much. When the post M.F. created and published of Minor #1 was brought to the attention of Wheeler and her administrative team, Wheeler determined that no action towards M.F. was necessary—no questions, no investigation, no punishment, *nothing*. *See* Aff. of Def. Wheeler at ¶ 3, ECF No. 8-1. From there on out, Defendants present *zero* evidence that any disruption at Durham Intermediate School ("<u>Durham</u>") resulted from M.F.'s speech. Defendants valiantly attempt to muddy the

---

[3] Wheeler's affidavit claims to have several attached exhibits, but there are none.

factual waters to give the appearance of M.F.'s involvement, but read closely, Defendants do not point to an iota of evidence that M.F.'s speech caused disruption at Durham.

Instead, Defendants reveal the rationale with which they intend to scapegoat M.F.—his association with Minor #3. As Defendants' response and affidavit show, whatever disruption, if any, student speech caused at Durham, it was not M.F.'s speech that caused such disruption. *See, e.g.*, Defs.' Br. at 6–7, ECF No. 8; Aff. of Def. Wheeler at ¶¶ 7, 21–23, ECF No. 8-1. The briefing sleight-of-hand Defendants attempt in their response cannot hide the fact of the matter— Defendants are trying to punish M.F. for a post he did not create or publish. *See, e.g.*, Defs.' Br. at 13 ("M.F.'s post(s) were directed at . . . Minor #1 *and Minor #2* . . . ." (emphasis added)); 14, 19 (attributing Minor #3's post of Minor #2 to M.F.); *see also, e.g.*, *id.* at 6 (stating that M.F. did not create or publish the post of Minor #2 and was simply "present" during the post's creation and publication); Decl. of Michael David Fisher at ¶ 4, APP.001 (explaining that his son "explicitly informed Defendants that he [M.F.] did not create of publish the post" of Minor #2). By their own admission, Defendants seek to go where no court has gone before—punishing a student for the off-campus, out-of-school speech *of another student*.[4] No legal authority sanctions such state action, let alone by contravening M.F.'s constitutional rights. *See Mahanoy*, 141 S. Ct. at 2053 n.14 (Alito, J., concurring) ("There is no basis for concluding that the original public meaning of the free-speech right protected by the First and Fourteenth Amendments was understood by Congress or the legislatures that ratified those Amendments as permitting a public school to punish a wide swath of off-premises student speech.").

---

[4] By making this argument, Defendants may have revealed *another* way in which they transgressed against the Constitution—by violating M.F.'s First Amendment right to association. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 925 (1982) (Neither "guilt by association" nor "guilt for association" is "permissible under the First Amendment.").

Furthermore, Defendants' evidence shows what actually caused the disruption Defendants contend occurred: (1) the post by Minor #3; and (2) an alleged police investigation into a separate matter.[5] As Defendants themselves explained, the post M.F. created and published was not a cause for concern. *See* Aff. of Def. Wheeler at ¶ 3, ECF No. 8-1. Yet, according to Defendants, as soon as they learned about the post Minor #3 created and published, that is when the disruption, if any, began. *See, e.g.*, *id.* at ¶¶ 7, 18, 20–22, 24–25. The contentions Defendants make regarding the disruptive nature of student speech at Durham relate to the speech of Minor #3, not M.F. And then there is the police investigation. By Defendants' own admission, the District's student resource officer, a uniformed Southlake Police Department officer ("Wormley"), was at Durham investigating a police complaint regarding fraudulent use of a Durham student's picture on social media. *See id.* at ¶ 11. During this investigation—which, as Wheeler stated in her affidavit, concerned a different matter than the allegations of bullying—Wormley "interviewed 20-25 students" in a single school day, "pull[ing students] from instructional learning" to do so. *See id.* at ¶ 12. Yet when students missed class and teachers struggled to teach, *see id.* at ¶¶ 12–13, who do Defendants blame this on? Not the law enforcement officer who elected to conduct his investigation in such a disruptive manner, but M.F.—an eleven-year-old student who had *no control over the investigation*.

Further, Wheeler's affidavit shines a light on what truly transpired here—Wheeler abdicated her role as a school administrator and handed the keys of Durham over to parents and community members. *See, e.g.*, *id.* at ¶ 19 (fielding "desired discipline/expulsion outcomes" for M.F. from the community at large); *see also id.* at ¶¶ 20–27. Wheeler and Ray are supposed to be

---

[5] Worth noting, the Supreme Court has never held that the complaints of non-students are able to trigger a public school's authority to punish student speech. *See, e.g.*, *Mahanoy*, 141 S. Ct. at 2043 (majority opinion); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 504 (1969).

the figurative adults in the room—they are tasked with administering and educating children in the District in a responsible manner. Defendants simply cannot toss the Constitution aside at will. *Cf. Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 69 (2020) (Gorsuch, J., concurring) ("Government is not free to disregard the First Amendment in times of crisis."). In this case, Defendants did not act as they should have—they did not exercise their "discretion . . . in a manner that comports with the transcendent imperatives of the First Amendment." *Bd. of Educ. v. Pico*, 457 U.S. 853, 864 (1982) (plurality opinion). And they must do so even when the going gets tough. *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992) ("Speech cannot be . . . punished or banned[] simply because it might offend a hostile mob.").

In sum, Defendants have adduced no evidence, let alone enough to defeat Plaintiff's likelihood-of-success argument, that M.F.'s off-campus, out-of-school speech "materially disrupt[ed] classwork or involve[ed] substantial disorder or invasion of the rights of others." Defendants are far from meeting their heavy burden, and "where there is no finding and no showing that engaging in the forbidden conduct . . . 'materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained." *Tinker*, 393 U.S. at 509 (citation omitted). Plaintiff has more than shown his substantial likelihood of success on the merits. *See also* 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 65.36[2] (3d ed.) ("In some cases, when the feared injury would be severe, the movant need not demonstrate a likelihood of success on the merits; a showing that the issue is properly raised in litigation may suffice.").

## II. DEFENDANTS' OVERBREADTH ARGUMENT PROVES M.F.'S THEORY[6]

---

[6] Though Defendants nominally address Plaintiff's overbreadth and void-for-vagueness challenges, the substance of Defendants' argument only addresses overbreadth. *See* Defs.' Br. at 15–17, ECF No. 8. As such, Plaintiff replies only to contentions regarding overbreadth.

Defendants broach Plaintiff's argument about the District's Student Handbook and Code of Conduct (the "SCOC") with two retorts—neither is persuasive. First, Defendants invoke the classic slippery-slope fallacy, contending that if there is something problematic with the SCOC, then all school districts in Texas must have that problem too. *See* Defs.' Br. at 15–16, ECF No. 8. Maybe that is the case, maybe it is not. But stated differently, Defendants' argument is: if every student code of conduct in every school district in Texas violates the First Amendment, then there is nothing to worry about. This cannot be correct. Further, the nature of overbreadth challenges recognizes this potent reality, which is why a First Amendment overbreadth analysis begins with the as-applied challenge. *See Bd. of Trs. v. Fox*, 492 U.S. 469, 485 (1989). As such, Defendants' concern is of no moment.

Second, Defendants contend that the SCOC "meticulously aligns with legal guidelines and established precedent for the regulation of off-campus speech" and is thus not overbroad. Defs.' Br. at 16. But they are wrong for two reasons. For one thing, the SCOC facially belies this contention—the SCOC purports to grant the District "disciplinary authority over a student . . . [f]or any misconduct substantially likely to create a material disruption of the orderly operation of school, regardless of time and location."[7] No authority, let alone *Tinker* or *Mahanoy*, affords public schools this wide-ranging, nearly boundless disciplinary authority. As well, Defendants' argument miscomprehends the nature of Plaintiff's challenge. Plaintiff simply contends that the SCOC, like all overbroad government enactments, "is designed to burden or punish activities which are not constitutionally protected," but "includes within its scope activities which are protected by the First Amendment." *Hill v. Houston*, 764 F.2d 1156, 1161 (5th Cir. 1985) (internal quotation marks,

---

[7] The SCOC is a publicly available document of which the Court may take judicial notice. *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 740 (N.D. Tex. 2016).

citation, and brackets omitted). Perhaps the SCOC permissibly punishes student speech sometimes, but the heart of Plaintiff's challenge is that, at a minimum, the SCOC "include[s] within its scope" M.F.'s speech at issue, which, as Defendants concede, is "protected by the First Amendment." *Id.* Armed with nothing but conclusory assertions seeking to conjure authority to regulate student speech out of thin air, Defendants' argument does not affect Plaintiff's substantial likelihood of success here.

### III.     DEFENDANTS MISUNDERSTAND WHAT IRREPARABLE HARM IS

From their argument on irreparable harm, it is clear that Defendants miss the concept's import. To start, they begin by rehashing their failed merits argument into one for irreparable harm, but that effort fails. Plaintiff's irreparable injury is the loss of First Amendment freedoms, which Defendants do not dispute. *See* P.'s Br. at 28–29, ECF No. 5. Defendants nevertheless maintain that they can suppress M.F.'s rights. But that is the exact reason why these proceedings are ongoing: Defendants insist that they can take away M.F.'s First Amendment rights, but because they lack the authority to do so, they are depriving him of something they acknowledge is a constitutional right. Their argument lacks logical coherence.

Defendants throw out two other arguments to see if they stick—they do not. Defendants first argue that Plaintiff has not suffered irreparable harm because he failed to exhaust his administrative remedies with the District. Defs.' Br. at 17, ECF No. 8. This is not a serious argument—not only does Defendants' contention have nothing to do with the irreparable-harm factor, but it also flouts well-established law that "plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." *Porter v. Nussle*, 534 U.S. 516, 523 (2002). Second, Defendants' argument that Plaintiff will only be irreparably injured after the administrative-appeals process is factually untrue. The SCOC and

M.F.'s DAEP placement order work in tandem to make the DAEP placement effectively unappealable. The appeals process, at its fastest, would take twenty or so days. But what Defendants really avoid mentioning is that (i) because of the length of his DAEP placement, M.F. cannot legitimately appeal his placement itself per the SCOC; (ii) the appeals process "may not be used to overturn a disciplinary assignment" per the SCOC; and (iii) M.F.'s placement in DAEP would not be stayed during the appeals process. *See* Disciplinary Alternative Education Program Placement Order of M.F., APP.003–.005. What Defendants really desire is for the administrative appeals to play out just long enough to moot M.F.'s DAEP placement. That is a result Plaintiff cannot abide.

### IV.  DEFENDANTS OFFER NOTHING TO SHIFT THE BALANCE OF EQUITIES IN THEIR FAVOR

Defendants offer no arguments to shift the balance of equities anywhere toward them. As with the irreparable-injury factor, they begin by rehashing their merits argument—this gets Defendants nowhere. And their other argument is also a nonstarter. Defendants contend that the equities are in their favor because failing to "act . . . could result in violation of Texas State Law." Defs.' Br. at 19, ECF No. 8. There are two fatal problems with this contention. First, though the parties can agree that Texas is a great state, the Supremacy Clause of the federal Constitution reigns, and, as such, "all state and local laws must comply with the First Amendment." *Bradshaw v. Salvaggio*, No. 20-cv-01168, 2020 U.S. Dist. LEXIS 250873, at *19 (W.D. Tex. Oct. 28, 2020); *see* U.S. CONST. art. VI, cl. 2. So Defendants' fear of violating Texas law by enforcing the federal Constitution is misplaced to say the least. Second, Defendants came nowhere close to "present[ing]" the "powerful evidence of harm to its interests" necessary to carry their burden on this factor. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). Thus, the balance of equities remains firmly in Plaintiff's favor.

**V.      BEING A PUBLIC ENTITY AND SERVING THE PUBLIC INTEREST ARE NOT ONE IN THE SAME**

Finally, Defendants offer nothing of substance to dispute Plaintiff's argument that "injunctive relief 'protecting First Amendment freedoms is *always* in the public interest.'" Pl.'s Br. at 30, ECF No. 5 (brackets omitted) (quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)). And the only case they cite in response is factually inapposite—there, the court determined that there was no constitutional right at issue. *See Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 766 (S.D. Tex. 2008). As with the other TRO-factors, the public-interest factor weighs steadfastly in Plaintiff's favor.

## CONCLUSION

For these reasons and those expressed in the brief in support of the motion, Plaintiff M.F. respectfully requests that this Court grant the emergency motion for temporary restraining order.

Dated: November 3, 2023

Respectfully submitted,

*/s/ Griffin S. Rubin*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
mas@sbaitilaw.com
**Griffin S. Rubin**
Texas Bar No. 24121809
gsr@sbaitilaw.com
**SBAITI & COMPANY PLLC**
Dallas Arts Tower
2200 Ross Ave., Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367

**ATTORNEYS FOR PLAINTIFF**