UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **M.F., et al.,** § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:23-cv-01102-O |
| § | |
| **CARROLL INDEPENDENT SCHOOL DISTRICT, et al.,** § § § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Adrian Wormley's Motion for Summary Judgment and Brief in Support (ECF Nos. 73–74), filed on March 8, 2024; Plaintiffs' Response (ECF No. 77), filed on March 15, 2024; and Adrian Wormley's Reply (ECF No. 78), filed on March 20, 2024. Having considered the briefing and applicable law, the Court **GRANTS** Defendant Adrian Wormley's Motion. Specifically, the Court concludes that Counts 8 through 12 of Plaintiffs' Third Amended Complaint are not supported by clearly established law and Defendant Adrian Wormley is entitled to qualified immunity. Accordingly, Plaintiffs' claims against Defendant Adrian Wormley are **DISMISSED with prejudice**.

Additionally, before the Court are Defendant City of Southlake's Motion to Dismiss (ECF No. 79), filed on April 8, 2024; Plaintiffs' Response (ECF No. 80), filed on April 29, 2024; and Defendant City of Southlake's Reply (ECF No. 81), filed on May 10, 2024. Having considered the briefing and applicable law, the Court **GRANTS** Defendant City of Southlake's Motion. Plaintiffs' Counts 8 through 12 of Plaintiffs' Third Amended Complaint are **DISMISSED with prejudice**.

1

I. **BACKGROUND**[1]

This case involves an eleven-year-old child ("M.F.") who made offensive posts on TikTok, a social media platform. M.F. is a student at Durham Intermediate School ("Durham"), which is a public school for fifth and sixth graders in the Carroll Independent School District (the "District"). Whitney Wheeler ("Wheeler") is the principal of Durham. Wheeler runs the school with support from the assistant principal, Kim Ray ("Ray"). Durham also has a uniformed student resource officer, Adrian Wormley ("Officer Wormley"), who is from the Southlake Police Department. Plaintiffs in this lawsuit are M.F. and his parents ("M.F.'s Parents").

A. **The TikTok Posts**

In the Fall of 2023, M.F. and several other students created a shared account on TikTok. Around this time, M.F. and another individual in his extended friend group (Minor #1) engaged in mean-spirited exchanges.[2]

On Friday, October 20, 2023, M.F. visited his friend's house ("Minor #3") outside of school hours. At or around 6:00 p.m. that evening, M.F. and Minor #3 made several posts on the shared TikTok account. M.F. created and shared one post, which contained a picture of Minor #1 with the following statement:

> [Minor #1] sucks at sports and is so ugly. He meatrides [student] amd nobody likes him. he is super dumb and as smart as [student] which isnt saying much. His ugly side [p]art looks terrible and idk how he pulled [student] but seeing as how [student] looks im not surprised she said yes.[3]

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Third Amended Complaint or the Court's Temporary Restraining Order. *See* Pls.' Third Am. Compl., ECF No. 57; TRO, Nov. 4, 2023, ECF No. 13.
[2] The Court maintains the same naming convention for the students used in the TRO. *See* TRO, Nov. 4, 2023, ECF No. 13.
[3] The Court does not denote the numerous spelling and grammatical errors in this post.

Additionally, M.F. admitted to making a post about himself. Like the post about Minor #1, M.F.'s post about himself contained his own picture with self-denigrating text overlaying the image.[4] These two posts appear to be the only ones M.F. created and published on the shared TikTok account. There was an additional post that featured an image of Minor #2[5] that M.F. did not post.[6] At or around 8:30 p.m. that same Friday evening, M.F. took down his posts.

### B. Officer Wormley's Involvement

Officer Wormley discovered the TikTok Posts on October 24, 2023, after Minor #4's parent contacted the Southlake Police Department to make a complaint. According to Minor #4's parent, Minor #4 experienced problems at school, which continued after Durham administrators failed to stop the problems.[7] Minor #4's parent contacted the Southlake Police Department reporting that his child, Minor #4, was accused of setting up a fake TikTok account that posted the offensive and derogatory statements about Durham students.[8] Minor #4's parent wanted to clarify that Minor #4 did not have any connection with the fake TikTok account. Additionally, Minor #4's

---

[4] *See* Pl.'s Br. in Supp. of Emergency Mot. for TRO 3, ECF No. 5.
[5] The post about Minor #2 similarly contained an image with the following statement: "[Minor #2] is a very fat girl and struggles to hold her self back from the buffet she breaks down walls to get to a buffet table and she likes [student] and the only person she has managed to pull is [student] shes so bad at volleyball but it makes sense because shes so fat she cant move around [Minor #2] is as chubby as a bean bag she talks crap about everyone and she said [student] isa stupid curry muncher who makes out with her fake bf [Minor #2] is the roumor queen." Def. Officer Wormley's App. in Supp. Mot. Summ. J. 35, ECF No. 74-1. Once again, the Court does not denote the numerous spelling and grammatical errors in this post.
[6] *Compare* Pl.'s Reply Br. in Supp. of Emergency Mot. for TRO 1, ECF No. 11 ("[I]t is uncontroverted that M.F. did not create or publish the post regarding Minor #2."), *with* Defs.' Resp. to Pl.'s Br. in Supp. of Emergency Mot. for TRO 3, ECF No. 8 (noting, without disputing, that M.F. "admitted that . . . he did not create the image or write the statement related to Minor #2"); *see also* Def. Officer Wormley's Br. in Supp. Mot. Summ. J. 14, ECF No. 74 ("Minor #3 admitted he was involved in helping make the derogatory posting about Minor #2.").
[7] Def. Officer Wormley's App. in Supp. Mot. Summ. J. (Wormley Dec.) 24, ECF No. 74-1.
[8] *See id.* at 35–37; *see also* Def. Officer Wormley's Sealed App. in Supp. Mot. Summ. J. 40–42, ECF No. 75-1.

parent thought that the fake TikTok account amounted to the cyber bullying of Minor #4 and other Durham students.[9]

### C. Officer Wormley's Investigation

On October 24, 2023, Officer Wormley investigated the complaint by interviewing multiple students throughout the school day. One of the students interviewed by Officer Wormley was M.F. After pulling M.F. from class, Officer Wormley questioned M.F. with the door shut regarding the shared TikTok account. M.F. denied involvement. During this first interview, M.F. alleges that Officer Wormley searched his phone without authorization.[10] Officer Wormley disputes this fact and maintains he never searched through M.F.'s phone.[11]

Roughly an hour later, Officer Wormley again pulled M.F. out of class for further questioning. This time, with the door open, Officer Wormley demanded to know whether M.F. created the posts on the shared TikTok account from Friday, October 20, 2023. M.F. again denied involvement and Officer Wormley released M.F. to class. But after Officer Wormley interviewed other students who said that M.F. created the TikTok account, Officer Wormley pulled M.F. from class a third time and took M.F. back to his office. This time, Minor #3 was already in the office. Officer Wormley questioned M.F. demanding to know his involvement with the October 20 posts on the shared TikTok account. Eventually, both students admitted to posting on the shared TikTok account. Officer Wormley immediately notified Ray that he had two students in his office who admitted to making the TikTok posts. After Ray arrived, she walked the students to the main office suite and separated them into different rooms. Ray placed M.F. in her office. While there, Ray instructed M.F. to write a statement about his involvement in the posts made on the shared TikTok

---

[9] Def. Officer Wormley's App. in Supp. Mot. Summ. J. (Wormley Dec.) 23–24, ECF No. 74-1.
[10] Pls.' App. in Resp. to Officer Wormley's Mot. Summ. J. (M.F. Dec.) 2, ECF No. 77-1.
[11] Def. Officer Wormley's App. in Supp. Mot. Summ. J. (Wormley Dec.) 29, ECF No. 74-1.

account. Wheeler eventually arrived and asked clarifying questions about M.F.'s statement. Wheeler also asked M.F. if he used his personal device for the posts, which M.F. confirmed.

After all of this transpired, the District called M.F.'s Parents about the situation. Ray informed M.F.'s mother that M.F. had been involved in some posts made on the shared TikTok account and that M.F. was to serve an out-of-school suspension for three days until the District could conduct an investigation. This is when M.F.'s Parents first learned about the situation, including Officer Wormley's investigation and questioning of M.F. Officer Wormley was not involved in any of Durham's decisions to punish M.F.[12]

### D. Procedural History

On October 29, 2023, M.F., by and through his father and mother, filed this lawsuit as the sole Plaintiff,[13] alleging violations of his constitutional rights under 42 U.S.C. § 1983. M.F. also sought a temporary restraining order. The Court enjoined Carroll Independent School District, Wheeler, and Ray ("CISD Defendants") from continuing to punish M.F. for his protected off-campus, out-of-school speech.[14] As a result, the Court ordered the CISD Defendants to immediately reinstate M.F. at Durham. The CISD Defendants and Plaintiff reached an agreement before the Court could hold a hearing on whether to convert the temporary restraining order into a preliminary injunction.[15] The temporary restraining order expired and M.F. has continued to attend Durham.

As this lawsuit progressed, M.F. amended his Complaint to include his parents as Plaintiffs to this suit and join two new Defendants: Officer Wormley and the City of Southlake

---

[12] *Id.* at 28.
[13] Since the initial filing of this lawsuit, M.F.'s Parents joined the lawsuit as co-Plaintiffs. The initial filings, including the TRO, only involved M.F. as an individual Plaintiff and are referred to accordingly by the Court.
[14] *See* TRO, Nov. 4, 2023, ECF 13.
[15] Notice of Mootness, ECF No. 31.

("Southlake").[16] On February 12, 2024, Officer Wormley appeared in this matter, indicating his intent to assert the affirmative defense of qualified immunity.[17] Noting that qualified immunity must be resolved "at the earliest possible stage of the litigation," the Court ordered expedited briefing on any dispositive motion concerning this issue.[18] Officer Wormley timely moved for summary judgment asserting qualified immunity on March 8, 2024. Southlake moved to dismiss this case on April 8, 2024. Both Motions are now ripe for the Court's consideration.

## II.   LEGAL STANDARDS

### A. Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but instead an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner

---

[16] Pls.' Third Am. Compl., ECF No. 57.
[17] Mot. 1, ECF 63.
[18] Order 2, Feb. 15, 2024, ECF 71 (quoting *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022)).

in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," a court must deny the motion. *Id.* at 250–51.

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials" sued under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Such protection "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted). Critically, the plaintiff "has the burden to negate the [qualified immunity] defense once properly raised" by a

government official acting with discretionary authority. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Deciding whether an official is entitled to qualified immunity requires a court to apply the two-pronged analysis first established in *Saucier v. Katz*, 533 U.S. 194 (2001). Courts have discretion to decide which of the two prongs should be addressed first in light of the circumstances of each particular case. *See Pearson*, 555 U.S. at 236, 242 ("[T]he judges of the district courts . . . are in the best position to determine the order of decision making that will best facilitate the fair and efficient disposition of each case.").

The first prong of the qualified immunity inquiry is whether the facts are sufficient to make out a violation of a constitutional or federal statutory right. *Id.* at 816–15. If a plaintiff's facts do not set out a legitimate claim for relief for violation of a right, no further inquiry is necessary. *Id.*

This second qualified immunity prong is whether a defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County*, 543 F.3d 221, 226 (5th Cir. 2008) (citation omitted). The United States Supreme Court has repeatedly recognized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To be "clearly established," an asserted constitutional right "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Otherwise, a plaintiff "would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (alteration in original) (citation omitted). The clearly established inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of

the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

The Supreme Court has stressed the demanding nature of the clearly established law standard and the level of specificity required. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (recognizing that it is the plaintiff's burden to "identify a case that put[s] [a defendant] on notice that his specific conduct was unlawful"). While a plaintiff need not provide a case directly on point to show that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (quoting *Ashcroft*, 563 U.S. at 741). If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley*, 475 U.S. at 341; *see also Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Conversely, an officer's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent that the officer's conduct, when undertaken, would be a violation of the right at issue. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000).

A qualified immunity case changes the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (1991)).

### C. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court

assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks and citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). A court may consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III.   ANALYSIS

#### A.   Officer Wormley's Motion for Summary Judgment

Officer Wormley asserts he is entitled to qualified immunity.[19] In response, Plaintiffs contend that Officer Wormley is not entitled to qualified immunity because M.F.'s rights have been clearly established for "more than fifty years"[20] and because "Officer Wormley seeks an unprecedented expansion" of law enforcement's ability to infringe on students constitutional rights.[21] Plaintiffs bear the burden of establishing that the facts show that (1) Officer Wormley violated the Fourth Amendment rights of M.F. and the Fourteenth Amendment rights of both M.F. and M.F.'s Parents and (2) these rights were "clearly established" at the time of Officer Wormley's alleged misconduct. *Ontiveros*, 564 F.3d at 382. For the following reasons, the Court concludes that Plaintiffs have failed to carry their burden as to the clearly established law prong for the Fourth

---

[19] Def. Officer Wormley's Br. in Supp. Mot. Summ. J., ECF No. 74.
[20] Pls.' Resp. to Officer Wormley's Mot. Summ. J. 2, ECF No. 77.
[21] *Id.*

Amendment and Fourteenth Amendment claims. As a result, Officer Wormley is entitled to qualified immunity.

### 1. Qualified Immunity: Clearly Established Law

Because Plaintiffs do not cite any clearly established law, the Court only addresses this prong of the qualified immunity test. Plaintiffs, in each of their counts, fail to overcome the high burden of providing the Court with clearly established law that gave Officer Wormley a "fair warning" of a constitutional violation. *See Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) ("The sine qua non of the clearly-established inquiry is 'fair warning.'") (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

To be "clearly established," an asserted constitutional right "must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79. (quoting *Anderson*, 483 U.S. at 640). In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (alteration in original) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (emphasis in original) (internal quotations marks and citations omitted). Finally, "[t]he plaintiff has the burden to point out clearly established law." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021).

Here, M.F. alleges Officer Wormley violated his Fourth Amendment rights in two ways: (1) unlawful seizure by detaining M.F. and (2) unlawful search by looking through M.F.'s cell phone.[22] Regarding M.F.' unlawful seizure claim, M.F. would need to show that he was seized within the meaning of the Fourth Amendment and that the officer lacked the requisite level of

---

[22] Pls.' Third Am. Compl. ¶¶ 114–33, ECF No. 57.

12

cause to seize him (*i.e.*, that the seizure was unconstitutional). M.F. cites to one case to argue he was detained during the interviews.[23] *See Sanchez v. Stockstill*, No. CIV.A.SA-04-CA-110-X, 2004 WL 2580768, at *6–8 (W.D. Tex. Nov. 15, 2004). But *Sanchez* does not answer what level of cause would apply.

M.F. argues that probable cause is the proper standard and Officer Wormley admitted that he did not have probable cause to investigate M.F. until the third interview.[24] Officer Wormley argues that the reasonable suspicion standard applies.[25] Regardless of what standard applies, Plaintiff cites to no case that clearly establishes what standard applies to these facts. M.F.'s failure to cite cases that clearly establish the standard of M.F.'s constitutional right is fatal because to survive qualified immunity the constitutional right "must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S at 640). Accordingly, qualified immunity is **GRANTED** and M.F.'s unlawful detention claim is **DISMISSED**.

Turning to M.F.'s claim that Officer Wormley unlawfully searched his cell phone, M.F. also does not cite any cases with similar facts. *New Jersey v. T.L.O.* is the landmark case for Fourth Amendment search claims in schools. 469 U.S. 325 (1986). In *T.L.O.*, the Supreme Court recognized that school officials have broad leeway in the Fourth Amendment context based on their "substantial interest . . . in maintaining discipline in the classroom and on school grounds." *Id.* at 339.

M.F. argues that *T.L.O.* does not apply because "there was no school-related conduct at issue at all."[26] However, M.F. does not cite to any courts that have held *T.L.O.* only applies in schools when school-related conduct is at issue. To the extent the Court can identify similar

---

[23] Pls.' Resp. to Officer Wormley's Mot. Summ. J. 6, ECF No. 77.
[24] Pls.' App. in Opp. Mot. Summ. J. 14:4-18, ECF No. 77-1.
[25] Def. Officer Wormley's Br. in Supp. Mot. Summ. J. 23, ECF No. 74.
[26] Pls.' Resp. to Officer Wormley's Mot. Summ. J. 11, ECF No. 77.

school-cellphone-search cases, those cases support Officer Wormley, not M.F. Courts that have considered the seizure of a student's phone applied *T.L.O.* and found the actions constitutional under the circumstances. *See DeCossas v. St. Tammany Par. Sch. Bd.*, No. CV 16-3786, 2017 WL 3971248, at *17–19 (E.D. La. Sept. 8, 2017) (applying the *T.L.O.* standard to a cellphone search and finding no constitutional violation); *J.W. v. Desoto Cnty. Sch. Dist.*, No. 2:09-CV-00155-MPM, 2010 WL 4394059, at *4–7 (N.D. Miss. Nov. 1, 2010) (same).

M.F. cites to *Terry v. Ohio*, because that case requires a search to be "justified at its conception." 392 U.S. 1, 19 (1968). However, citing a case like *Terry* that does not deal with schools whatsoever is inapposite. M.F. does not cite to cases with similar facts to satisfy his burden of "point[ing] out clearly established law." *Tucker*, 998 F.3d at 173.

M.F. devotes a considerable amount of argument to distinguishing Officer Wormley's cases, but this does not satisfy his burden of affirmatively showing clearly established law. At best, M.F. has indicated that the law in this area is underdeveloped, which would still entitle Officer Wormley to qualified immunity. *See Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) ("[Plaintiff] must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" (quoting *Mullenix*, 577 U.S. at 11) (second and third alterations in original)).

M.F. argues that off-campus actions should not result in "highly intrusive searches and seizures upon a student's return to campus."[27] But M.F. does not meet his burden of citing cases that stand for the proposition that off-campus activities cannot result in on-campus investigation.

---

[27] *Id.* at 18–19.

Accordingly, qualified immunity is **GRANTED** and M.F.'s unlawful search claims is **DISMISSED**.

Plaintiffs' Third Amended Complaint next alleges three violations of the constitutional right to the parent-child relationship under the Fourteenth Amendment. M.F. brings one claim himself and M.F.'s Parents bring two claims. M.F. alleges that Officer Wormley deprived M.F. of his constitutional "right for his parents to make decisions concerning his care, custody, and control" by failing to notify his parents of Officer Wormley's investigation and interviews about the TikTok account.[28] M.F. cites to *Troxel v. Granville*, in which the Supreme Court recognized "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the] Court."[29] 530 U.S. 57, 65 (2000). Again, however, M.F. misses the mark in identifying clearly established law. M.F. does not point to any cases with analogous facts to support that the law is clearly established.

The first cases cited by M.F. identifies is *Troxel*.[30] *Troxel* is not similar to this case, as it involves grandparent visitation rights. The only other case cited by M.F. is *McMurry v. Brunner.* No. 21-50888, 2022 WL 17493708 (5th Cir. Dec. 7, 2022). *McMurry* involves an officer removing a child from the parent's home during a child endangerment investigation. 2022 WL 17493708, at *1–2. Neither of the cases cited by M.F. involve a school, rendering these cases not analogous for the purposes of the clearly established law prong. Additionally, the two cases raised by M.F. involve a *parent's* constitutional right of "care, custody, and control of their children." *Troxel*, 530

---

[28] Pls.' Third Am. Compl. ¶ 137, ECF No. 57.
[29] Pls.' Resp. to Officer Wormley's Mot. Summ. J. 18–19, ECF No. 77 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (alteration in original) (internal quotation marks omitted)).
[30] *Id.*

U.S. at 65. M.F. did not identify a case in which a *child* is claiming a Fourteenth Amendment violation for not having his parents make decisions on his behalf.

Finally, M.F.'s Parents bring two Fourteenth Amendment claims derivative of Officer Wormley violating the Fourth Amendment rights of their son, M.F.[31] Having already ruled that M.F. failed to established a Fourth Amendment violation, M.F.'s Parents' two counts fail as a matter of law. "[Their] failure to provide a factually comparable case forecloses [their] ability to overcome [Officer Wormley's] qualified immunity." *Stapleton v. Lozano*, 125 F.4th 743, 753 (5th Cir. 2025).

Neither the importance of the alleged violated constitutional right nor the facts of this case alter Plaintiffs' burden to "identify a case in which an officer" acted similarly and was "held to have violated the Constitution." *Id*. Accordingly, the Court concludes that Plaintiffs have failed to carry their burden of showing that Officer Wormley is not entitled to qualified immunity.[32] Qualified immunity is **GRANTED** on Counts 8 through 12 of Plaintiffs Third Amended Complaint. These Counts are hereby **DISMISSED** against Officer Wormley in his individual capacity.

### 2. Official Capacity Claims

Plaintiffs sued Officer Wormley in both his individual and official capacities and also sued the City of Southlake.[33] However, a suit against an officer in his official capacity is redundant to a

---

[31] Pls.' Resp. to Officer Wormley's Mot. Summ. J. 22, ECF No. 77 (quoting *McMurry*, 2022 WL 17493708, at *4) ("[T]he same misconduct that supports a child's Fourth Amendment claim can also support a parent's Fourteenth Amendment claim to their due process right to be free from interference with the care, custody, and management of their children.").

[32] Because the Court concludes that Plaintiffs failed to meet their burden of showing clearly established law to put Officer Wormley on notice of their constitutional rights, the Court need not decide whether the alleged constitutional rights were violated. *See Pearson*, 555 U.S. at 231 (2009) (overruling the mandatory order in the *Saucier* qualified immunity test because "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.").

[33] Pls.' Third Am. Compl. ¶¶ 11–12, ECF No. 57.

suit against the city because a suit against Officer Wormley in his official capacity is simply another way of suing the Southlake. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Martinez v. Crystal City ISD*, 2001 WL 274765, at *1 (5th Cir. 2001).

Officer Wormley moved to dismiss the claims against him in his official capacity. Plaintiffs failed to respond to Officer Wormley's request for dismissal. Plaintiffs' failure to respond constitutes abandonment of their claims against officer Wormley in his official capacity. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond her complaint constituted abandonment.") Accordingly, Plaintiffs' claims against Officer Wormley in his official capacity are **DIMSISSED with prejudice**.

### B. City of Southlake's Motion to Dismiss

Southlake moves to dismiss the claims against Southlake under Rule 12(b)(6) for failure to state a claim.[34] Southlake argues that "Plaintiffs have not pointed to any specific facts to identify any City policy or custom whatsoever that was involved in or caused a violation of civil rights."[35] In response, Plaintiffs argue that "Officer Wormley employed policies and practices of the City of Southlake that are designed for adult suspects but that do not properly distinguish between adults and young schoolchildren."[36] The Court agrees with Defendant that Plaintiffs failed to state a claim under Rule 12(b)(6).

To establish municipal liability, known as a *Monell* claim, "[P]laintiff[s] must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks–Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.

---

[34] *See* Def. Southlake's Mot. Dismiss, ECF No. 79.
[35] *Id.* at 10.
[36] Pls.' Resp. to Southlake's Mot. Dismiss 5, ECF No. 80.

658, 694 (1978) (holding that municipal liability is only available when "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" at issue in the suit). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (alteration in original) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Here, Plaintiffs fail to properly plead a non-conclusory policy. Thus, their *Monell* claim fails.

Plaintiffs, in response to Southlake's Motion, argue that Southlake's "fundamental failure in the policies and practices" is the "fail[ure] to train police officers on the need for probable cause" and "the distinction between" the interrogation of minors and adults.[37] Plaintiffs argue that there "is nothing implausible about this articulation of the policies and practices at issue."[38] Plaintiffs cite no more than Officer Wormley's actions to plead its argument.

In *Peña*, the plaintiff cited two "specific facts" to support her assertion that the police department had a policy of tasing non-suspect minorities: a written police department taser policy and the "specific facts" of her incident. *Id.* Because the written policy was not unconstitutional, the Circuit was only left with the "specific facts" of her excessive force claim. *Id.* When only the "specific facts" remained, the Circuit explained that "to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Id.* (internal quotation marks and citation omitted). The Circuit in *Peña* relied on *Spiller*, another Fifth Circuit case in which the Circuit rejected a vague and

---

[37] *Id.*
[38] *Id.* at 6.

conclusory claim by a black motorist that his arrest without probable cause resulted from the police department's general policy of disregarding the rights of black citizens. 130 F.3d at 167.

Here, Southlake's alleged policy of failing to train officers on probable cause and aggressively interrogating minors is just as vague and conclusory as that in *Spiller* and cannot survive the pleading stage. Accordingly, Plaintiffs' counts against Southlake are hereby **DISMISSED with prejudice**.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that Officer Wormley is entitled to qualified immunity. Accordingly, the Court **GRANTS** Officer Wormley's Motion for Summary Judgment (ECF No. 73). Plaintiffs' § 1983 claims against Officer Wormley are hereby **DISMISSED with prejudice**. The Court also **GRANTS** Southlake's Motion to Dismiss (ECF No. 79). Plaintiffs did not request leave to amend their Third Amended Complaint on this ground. Accordingly, Plaintiffs' § 1983 claims against Southlake are **DISMISSED with prejudice**. Pursuant to Federal Rule of Civil Procedure 58(a), a partial final judgment shall issue separately as there is no good reason final judgment on these claims should not be entered.

**SO ORDERED** on this **4th day** of **March, 2025**.

_[signature: Reed O'Connor]_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**