IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| M.F., et al., | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § Civil Action No. 4:23-CV-01102-O |
| | § |
| CARROLL INDEPDENT SCHOOL DISTRICT, | § |
| | § |
| Defendant. | § |

**MEMORANDUM OPINON AND ORDER**

Before the Court are Defendant Carroll Independent School District's ("the District") Motion for Summary Judgment and Brief in Support, filed August 29, 2025 (ECF Nos. 100, 102); Plaintiffs' Response, filed September 22, 2025 (ECF No. 108); and Defendant's Reply, filed October 6, 2025 (ECF No. 109). Having considered the briefing, the applicable law, and the parties' oral arguments, the Court **GRANTS** Defendant's Motion. Specifically, the Court concludes that Plaintiffs failed to establish a final policymaker for Counts One, Five, and Six. Plaintiffs failed to establish that the District's Code of Conduct was overbroad or void for vagueness for Counts Two and Three. Finally, Plaintiffs have abandoned their substantive due process claims in Counts Four and Seven. Accordingly, the Court **GRANTS** summary judgment for Defendant, and Plaintiffs' claims against the District are **DISMISSED with prejudice**.

I. **BACKGROUND**

This case involves a child ("M.F.") who made offensive posts on TikTok, a social media platform. At the time of the posts, M.F. was an eleven-year-old student at Durham Intermediate

1

School ("Durham"), a public school for fifth and sixth graders in the District.[1] The details leading to this dispute are set out below.

### A. Factual Background

M.F. and several other students were involved in creating a shared account on the social media platform TikTok in the fall of 2023. Around this time, M.F. and another individual in his extended friend group ("Minor #1") were engaging in mean-spirited social media exchanges.[2]

On Friday, October 20, 2023, M.F. visited his friend's ("Minor #3") house outside of school hours.[3] At or around 6:00 p.m. that evening, the boys used M.F.'s phone to make several posts on the shared TikTok account, "Durham LaLaBop," which had the profile description, "send requests only for Durham students."[4] M.F. used a picture of another classmate ("Minor #4") as the profile picture for the account.[5] One post contained a picture of Minor #1 with the statement:

> [Minor #1] sucks at sports and is so ugly. He meatrides [student] amd nobody likes him. he is super dumb and as smart as [student] which isnt saying much. His ugly side [p]art looks terrible and idk how he pulled [student] but seeing as how [student] looks im not surprised she said yes.[6]

M.F. helped his friend, Minor #3, create two other posts for the account that same evening.[7] One of these posts was a picture of Minor #2 with the statement:

> [Minor #2] is a very fat girl and struggles to hold her self back from the buffet she breaks down walls to get to a buffet table and she likes [student] and the only person she has managed to pull is [student] shes so bad at volleyball but it makes sense because shes so fat she cant move around [Minor #2] is as chubby as a bean bag

---

[1] Pls.' Third Am. Compl. 5, ECF No. 57.
[2] *Id.* at 16. The Court maintains the same naming convention for the students used in the TRO. *See* ECF No. 13.
[3] D.'s App. Supp. S.J. Ex. 8, 9:21-10:10, ECF No. 104-8.
[4] Mot. S.J. 16, ECF No. 102.
[5] *Id.* at 15.
[6] D.'s App. Supp. S.J. Ex. 5, ECF No. 104-5. The Court does not denote the numerous spelling and grammatical errors in this post.
[7] *Id.* at Ex. 19, 27:23-28:24, ECF No. 104-19.

>   she talks crap about everyone and she said [student] isa stupid curry muncher who makes out with her fake bf [Minor #2] is the roumor queen.[8]

M.F. also admitted to making a post about himself similarly containing his own picture with denigrating text overlaying the image.[9] At or around 8:30 p.m. that same Friday evening, M.F. took down his posts after receiving negative feedback from the student-based group texts to which the posts had been disseminated.[10]

The following week, several parents—including M.F.'s mother—expressed concerns about the posts.[11] Many others contacted the school about the account, seeking disciplinary action.[12] Principal Wheeler met with some of the parents in-person to discuss the posts.[13]

Minor #4's father filed a report with Southlake Police department.[14] This triggered an investigation by Student Resource Officer Adrian Wormley ("Officer Wormley"), who pulled several children out of class to interview them throughout the school day.[15] Officer Wormley pulled M.F. out of class three times.[16] M.F. denied his involvement the first two times, but admitted to his involvement in the TikTok account the third time.[17] Subsequently, Officer Wormley took M.F. to Principal Wheeler's office. M.F. informed the principal of his involvement in the posts and was given an opportunity to write his side of the story.[18] Principal Wheeler suspended him for three days while the school completed its cyberbullying investigation.[19]

---

[8] *Id.* at Ex. 6, ECF No. 104-6. Once again, the Court does not denote the numerous spelling and grammatical errors in this post.
[9] *Id.* at Ex. 3, 35:16–36:2, ECF No. 104-3.
[10] *Id.* at Ex. 19, 34:20–36:20, ECF No. 104-19.
[11] *Id.* at Ex. 14, 85:12–89:18, 90:20–92:5, 106:3-11, ECF No. 104-14.
[12] *See generally* ECF No. 104-37; *see also* D.'s Resp. Mot. TRO, Ex. A, 4-9, ECF No. 8-1.
[13] D.'s Resp. Mot. TRO, Ex. A, 4-9, ECF No 8-1.
[14] D.'s App. Supp. S.J. Ex. 37, 4, ECF No. 104-37.
[15] *Id.* Ex. 2, 15:14-19, ECF No. 104-2.
[16] *Id.*, 17:8.
[17] *Id.*, 28:19-30:14.
[18] *Id.*, 31:11; *see also* D.'s Resp. Mot. TRO Ex. A., 3-4, ECF No. 8-1.
[19] *Id.*

The principal and some administrators held a hearing on October 27, 2023, to which M.F. brought his parents, grandfather, and an attorney.[20] On October 29, 2023, M.F. was informed that his discipline for his involvement in the posts would be 45 days in the Disciplinary Alternative Education Program ("DAEP").[21] Although Plaintiffs were informed of the appeals process that would present the disciplinary decision before the District's Board of Trustees ("Board"), they never appealed the decision and instead filed suit.[22]

### B. Procedural Background

On October 29, 2023, Plaintiffs filed this lawsuit, alleging violations of M.F.'s constitutional rights under 42 U.S.C. § 1983. Plaintiffs also sought a temporary restraining order. The Court ordered the CISD Defendant to reinstate M.F. at Durham pending a hearing on a preliminary injunction.[23] Prior to the preliminary injunction hearing, the parties reached an agreement that obviated the need for such a hearing.[24]

Plaintiffs then amended their complaint, joining Officer Wormley and the City of Southlake ("Southlake").[25] Specifically, Plaintiffs added Counts 8 through 12, asserting unlawful detainment in violation of the Fourth Amendment,[26] unlawful search of M.F.'s cell phone in violation of the Fourth Amendment,[27] and three violations of the constitutional right to the parent-child relationship under the Fourteenth Amendment.[28] Officer Wormley moved for summary judgment on March 8, 2024.[29] Southlake moved to dismiss on April 8, 2024.[30]

---

[20] D.'s Resp. Mot. TRO, Ex. A 1-2, ECF No. 8-1.
[21] Pls.' Third Am. Compl. ¶ 54, ECF No. 57; D.'s Resp. Mot. TRO, Ex. A, ECF No. 8-1.
[22] D.'s App. Supp. S.J. 108:25–113:12, ECF No. 104-14.
[23] TRO, Nov. 4, 2023, ECF No. 13.
[24] Notice of Mootness, ECF No. 31.
[25] Pls.' Third Am. Compl., ECF No. 57.
[26] *Id.* ¶ 114–121.
[27] *Id.* ¶ 122–133.
[28] *Id.* ¶ 134–145.
[29] D. Adrian Wormley's Mot. S.J., ECF No. 73.
[30] D. City of Southlake's Mot. Dismiss, ECF No. 79.

This Court granted summary judgment as to Counts 8 through 12, finding that Defendant Adrian Wormley was entitled to qualified immunity and that Plaintiffs failed to state a claim against Southlake on March 4, 2025.[31]

The parties engaged in discovery, after which the District moved for summary judgment on the remaining claims on August 29, 2025.[32] This Court held a hearing on the Motion on November 3, 2025. The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

The Court should grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

---

[31] Memorandum Opinion and Order, Mar. 27, 2025, ECF No. 82.
[32] Mot. S.J., ECF No. 100.

5

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there is no support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

Plaintiffs bring all claims under Section 1983. A school district may be held liable for violating a student's constitutional rights under 42 U.S.C. § 1983. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To impose liability on a municipality under Section 1983, a plaintiff must establish "three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364–65 (5th Cir. 2020).

**A. Plaintiffs fail to establish a policymaker for the claims related to the disciplinary action.**

Plaintiffs' as-applied First Amendment claim and Due Process claims fail because their identification of a policymaker depends on an impermissible *respondeat superior* theory. A school district cannot be held liable under § 1983 based on a theory of *respondeat superior*. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1244 (5th Cir. 1993). Under Texas law, only the school's board is a policymaker for public schools. *See id.* at 1245; *Chavez v. Brownsville Independ. Sch. Dist.*, 135 F. App'x. 664, 679–80 (5th Cir. 2005). Accordingly, municipal liability attaches only if the Board was involved in or ratified the challenged conduct.

Here, Plaintiffs challenge M.F.'s suspension and reassignment to DAEP on the grounds that the punishment violated his First Amendment right to free speech and deprived him of due

6

process with respect to his rights to an education and reputation. However, only the principal and other administrators participated in these decisions. M.F. did not appeal the disciplinary decision, and so the Board neither approved it nor was otherwise involved.[33] Because school administrators, including principals, are not policymakers as a matter of law, Plaintiffs have not identified a final policymaker for any claims regarding the disciplinary decision. *Jett*, 7 F.3d at 1245.

Plaintiffs respond by asserting that "the Board's own failures are implicated in the use by [sic] an improper Code of Conduct by district employees."[34] But a decision by non-policymaking employees implementing official policy is a textbook *respondeat superior* claim that cannot support § 1983 liability. *See Jett*, 7 F.3d at 1246–47 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.").

A single decision by a non-policymaker is not a policy. *See Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). Therefore, an employee's implementation of official policy does not transform that employee into a final policymaker for purposes of Section 1983. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability"; rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur.").

---

[33] D.'s App. Supp. S.J. Ex. 14, 109:15–110:5, 11:10–112:9, ECF No. 104-14.
[34] Pls.' Resp. 23, ECF No. 108.

The record does not show that the Board ratified or participated in the disciplinary decision. Absent such involvement, all claims arising from that decision fail.[35] Accordingly, the Court **GRANTS** summary judgment for Defendant as to the as-applied First Amendment claim and the Due Process claims. Counts One, Five, and Six are **DISMISSED with prejudice**.

### B. Plaintiffs fail to establish that the Code of Conduct is facially unconstitutional.

Plaintiffs challenge the District's Code of Conduct ("Code") as being facially unconstitutional. Specifically, they allege it is overbroad and void for vagueness.[36] These claims fail as a matter of law.

As a threshold matter, Plaintiffs' Third Amended Complaint challenges language found in the 2022–23 Code.[37] But that language is not found in the 2023–24 Code, which was the operative Code at the time of the actions underlying this suit.[38] To the extent that Plaintiffs validly challenge the 2023–2024 Code—which they cite for the first time in their response to the Motion for Summary Judgment[39]—they fail to meet the high burden of demonstrating that the Code is facially unconstitutional.

1. <u>The policy is not overbroad.</u>

A policy is unconstitutionally overbroad if it "(1) prohibits a substantial amount of constitutionally-protected freedoms, when judged in relation to the regulation's 'plainly legitimate

---

[35] Because Plaintiffs failed to establish a policymaker, the Court does not reach the question of whether Plaintiffs successfully alleged a constitutional violation, the third requirement of a Section 1983 claim. Nor does the Court address Defendant's affirmative defense of failure to exhaust administrative remedies, although it is undisputed that Plaintiffs failed to do so.

[36] Defendant asserts that Plaintiffs' facial claims are moot because Plaintiffs have moved out of state and the school policy is outdated. *Smith v. Tarrant Cnty. Coll. Dist.*, 694 F. Supp. 2d 610, 621–22 (N.D. Tex. 2010). While Plaintiffs' injunctive claims are moot, Plaintiffs still have standing to seek damages. Pls.' Resp. 23–24, ECF No. 108; *see also Clark v. Dallas Indep. Sch. Dist.*, 806 F. Supp. 116, 119 (N.D. Tex. 1992) (holding that "claims for damages are not moot" in a case bringing an as-applied First Amendment challenge to an out-of-use school policy).

[37] Pls.' Third Am. Compl. ¶¶ 66, 74, ECF No. 57.

[38] Pls.' Third Am. Compl., ECF No. 57; *see also* Pls.' Resp. 19, ECF No. 108.

[39] *See* Pls.' Resp. 24, ECF No. 108.

sweep' . . . and (2) is not susceptible to a limiting construction that avoids constitutional problems." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1012 (5th Cir. 2023) (citations omitted). Because the Code is susceptible to a limiting construction, it is not overbroad.

Plaintiffs believe that the Code is overbroad and take issue with the provisions stating: "[s]chool rules and the district's authority to administer discipline apply whenever the interest of the district is involved, in accordance with law, on or off school grounds, in conjunction with or independent of classes and school-sponsored activities,"[40] and that the "district has disciplinary authority over a student . . . [f]or certain school-related misconduct, in accordance with law, regardless of time or location."[41]

These provisions are not overbroad. The phrase "according to law" can be read to mean that the District's authority is limited by and consistent with constitutional and statutory standards. Furthermore, the language of "off school grounds" and "regardless of time or location" is consistent with the law. Under Supreme Court and Fifth Circuit precedent, a school may regulate students' off-campus conduct if it "involves substantial disruption or invasion of the rights of others." *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 390 (5th Cir. 2015) (upholding the discipline of a student for off-campus YouTube posts that caused a substantial disruption) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969)). Because the Code can be read to follow constitutional principles, it is not overbroad.

    2. <u>The policy is not void for vagueness.</u>

"A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *A.M ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25

---

[40] D.'s App. Supp., Ex. 31, ECF No. 104-31.
[41] *Id.*

(5th Cir. 2009). "This standard is heightened in the context of education, '[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process.'" *McClelland*, 63 F.4th at 1013 (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986)). A student must demonstrate the school's code is "impermissibly vague in all of its applications" to succeed on a vagueness claim. *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982)); *see also Ferguson v. Estelle,* 718 F.2d 730, 734 (5th Cir. 1983) ("That some limited degree of uncertainty inheres in a statute's phrase does not require that the statute be denied all application.").

Plaintiffs challenge the Code as being impermissibly vague. Namely, they argue that it fails to provide adequate guidance to school officials for determining "if conduct is within its jurisdiction," which may depend on "whether the conduct at issue constitutes bullying."[42] As mentioned above, the Code tracks the language of *Tinker*. Courts routinely reject facial challenges to school policies that "are intended to codify the rule of *Tinker*." *See, e.g., Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 48 (10th Cir. 2013) (citing Sixth, Seventh, and Eighth Circuit cases that upheld *Tinker*-based policies, prohibiting conduct that would cause a "substantial disruption" to the school environment); *Fraser*, 478 U.S. at 678, 686 (rejecting student's claim that the policy, which forbade conduct that "materially and substantially interferes with the educational process," was unconstitutionally vague and finding the argument "wholly without merit").

Additionally, when taken as a whole, the Code gives adequate warning of when the District's interests are implicated and what conduct is prohibited. The Code defines bullying consistent with the Texas Educational Code and gives concrete examples such as "hazing, threats,

---

[42] Pls.' Resp. 26, ECF No. 108.

10

taunting, teasing, confinement, assault, demands for money, and destruction of property, theft of valued possessions, name calling, rumor spreading, or ostracism."[43] These provisions of the Code offer clear standards for some circumstances. Thus, the Code is not impermissibly vague in all instances. *McClelland*, 63 F.4th at 1013; *see also A.V. v. Plano Indep. Sch. Dist.*, 585 F. Supp. 3d 881, 906–07 (E.D. Tex. 2022).

## IV.   CONCLUSION

Plaintiffs fail to identify a policy maker for all of the as applied and facial claims related to his disciplinary decision. They also fail to meet the heightened standard for overbreadth and vagueness challenges in the school context. *McClelland*, 63 F.4th at 1013. Plaintiffs have abandoned their substantive due process claims. Accordingly, summary judgment is **GRANTED** for the District. All claims are **DISMISSED with prejudice**. Final judgment shall issue separately.

---

[43] Pls.' App. Supp. Resp. 32–33, 36, ECF No. 108-1 (defining bullying as "a single significant act or a pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves written or oral expression, including expression through electronic means, or physical conduct that occurs on or is delivered to school property or to the site of a school-related activity on or off school property, or on a publicly or privately owned school bus or vehicle being used for transportation of students to or from school or a school-sponsored or school related activity and that: 1. Has the effect or will have the effect of physically harming a student, damaging a student's property, or placing a student in reasonable fear of harm to the student's person or of damage to the student's property; 2. Is sufficiently severe, persistent, or pervasive enough that the action or threat creates an intimidating, threatening, or abusive educational environment for a student; 3. Materially and substantially disrupts the educational process or the orderly operation of a classroom or school; or 4. Infringes on the rights of the victim at school. Bullying may include the following: hazing, threats, taunting, teasing, confinement, assault, demands for money, and destruction of property, theft of valued possessions, name calling, rumor spreading, or ostracism. In some cases, bullying can occur through electronic methods ('cyber bullying')" and defining cyberbullying as "bullying that is done through the use of any electronic communication device, including through the use of a cellular or other type of telephone, a computer, a camera, electronic mail, instant messaging, text messaging, a social media application, an internet website, or any other internet-based or electronic communication tool, and includes cyberbullying that occurs off school property or outside of a school-sponsored or school-related activity, if the cyberbullying interferes with a student's educational opportunities or substantially disrupts the orderly operation of a classroom, school, or school-sponsored or school-related activity, as allowed by law . . . "); *cf.* Tex. Educ. Code Ann. § 37.0832 (using nearly identical language).

**SO ORDERED** this **14th day** of **November, 2025.**

*/s/ Reed O'Connor*
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**